IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:22-mc-80139-AMC/BER

UNITED STATES OF AMERICA,

    Petitioner,

v.

BOCA VIEW CONDOMINIUM ASSOCIATION, INC.,
DIANA KUKA, PRESIDENT,
ROSE WATKINS, ADMINISTRATOR,
POINTE MANAGEMENT GROUP, INC., AND
ERIC ESTEBANEZ, PROPERTY MANAGER,

    Respondents.
_____/

**REPORT AND RECOMMENDATIO ON THE UNITED STATES' PETITION TO ENFORCE SUBPOENAS ISSUED BY THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT [ECF No. 1]**

On February 17, 2022, the Honorable Aileen M. Cannon referred to me for appropriate disposition the United States' Petition to Enforce Subpoenas Issued by the United States Department of Housing and Urban Development ("Petition"). ECF Nos. 1, 6. Respondents Boca View Condominium Association, Inc., Diana Kuka, Rose Watkins, Pointe Management Group, Inc., and Eric Estebanez (collectively, "Respondents") filed a Response and Memorandum of Law in Opposition to the United States' Petition to Enforce HUD Subpoenas or, in the alternative, Motion to Dismiss Petition or Motion to Quash Subpoenas for Lack of Jurisdiction ("Response"). ECF No. 5. The United States (the "Government") filed an Amended Reply in Support of its Petition. ECF No. 8. I have reviewed the pleadings and exhibits attached

1

thereto. This matter is now ripe for review. For the reasons discussed below, I **RECOMMEND** that the Government's Petition be **GRANTED**.

## I. PROCEDURAL HISTORY AND ARGUMENTS

On May 19, 2020, Greta Tremmel, a unit owner at Boca View Condominium, filed a complaint with the Department of Housing and Urban Development ("HUD") against Respondents. ECF No. 1 at 3. Her complaint alleged that on April 24, 2020, she attempted to rent her condo to Jennifer Piraino. However, Respondents denied Ms. Piraino's rental application because Ms. Piraino works as an ICU nurse with high exposure to patients with COVID-19. *Id.* at 3–4. Upon receiving Ms. Tremmel's complaint, HUD opened an investigation into the allegations pursuant to its authority under 42 U.S.C. § 3610(a) and 24 C.F.R. § 103.215(a). *Id.* at 4. As a part of its investigation and to determine whether reasonable cause exits to believe Respondents discriminated against Ms. Piraino because of her association with peoples with disabilities, HUD informally requested from Respondents information and records related to the rentals and sales of unites at Boca View Condominium between March 2020 and November 2020. *Id.* at 4–6. Respondents repeatedly declined to produce the records for various reasons. *Id*.

On March 24, 2021, HUD served five identical subpoenas on each Respondent requesting the following records:

(1) [A] copy of all rental and sales applications for all dwelling units in Boca View Condominium submitted, approved, or denied from March 1, 2020 – November 23, 2020.
(2) [A]ny documents or communications relating to the rental and sales applications referenced in item 1, above, including decisions

        regarding the processing of those applications from March 1, 2020 – November 23, 2020.
  (3) [M]inutes of executive board, full board, and membership meetings for January 1, 2020 – November 23, 2020.

ECF No. 1-13. Respondents objected to the subpoenas and filed a motion for protective order and to quash the subpoenas with the HUD Office of Fair Housing and Equal Opportunity ("FHEO"). ECF No. 1 at 6. FHEO denied their motion. *Id*. Respondents then filed a request for a rehearing of the Order Denying Motion for Protective Order and to Quash Subpoenas, which FHEO denied. *Id*. at 7. HUD referred this matter to the Department of Justice to obtain Respondents' compliance with the administrative subpoenas and thereafter, the matter was referred to the United States Attorney's Office for the Southern District of Florida, who have filed the instant Petition. *Id*.

      Respondents represent that they denied Ms. Piraino's rental application not because of her profession—of which they claim to have had no knowledge at the time—but because the Association had, in direct response to the COVID-19 crisis, enacted a blanket policy of not approving new leases or allowing anyone to move into the building between mid-March 2020 and June 2020. ECF No. 5 at 3–8.

      Respondents argue that in order to meet its burden to make a prima facie showing that the subpoenas should be enforced, HUD must establish that (1) the inquiry is within the agency's authority; (2) the information sought is reasonably relevant to the inquiry; (3) the demand is not too indefinite; and (4) the administrative prerequisites have been satisfied. ECF No. 5 at 9 (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)).

      Respondents' first argue is that the Government cannot establish that the

3

inquiry is within the agency's authority because it has not identified a disabled individual against whom Respondents are alleged to have discriminated. *Id.* at 10–11. Put differently, Respondents argue that neither Ms. Piraino nor Ms. Tremmel have standing to make a complaint against Boca View Condominium because neither of them is disabled.

The Government responds that it has authority to inquire because the allegation arises from Ms. Tremmel's *association* with Ms. Piraino, who is closely associated with disabled individuals (i.e. those infected with COVID-19) because of her work as an ICU nurse. ECF No. 8 at 4 (citing *Velez v. Coral Gate West Condo. Ass'n*, No. 1:18-CV-24931, 2019 WL 2568856, at *5–6 (S.D. Fla. Jun. 21, 2019) (J. Gayles) and *Powell v. Morgan Prop. Sols., Inc.*, No: 6:18-cv-624-Orl-41KRS, 2018 WL 5014533, at *12 (M.D. Fla. Oct. 16, 2018)).

Respondents next point out that even if the Government meets its burden, the subpoenas still should not be enforced because they are overly broad. ECF No. 5 at 9. Respondents argue the subpoenas are overbroad in both time and scope because (a) the time frame for requests (1), (2), (3) (January 1 or March 1, 2020 to November 23, 2020) is overly broad in that the relevant time frame is March 2020 through June 2020; (b) the scope of requests (1) and (2) are overly broad in that it seeks sales information, which is wholly irrelevant to Ms. Tremmel's complaint alleging discrimination against a potential renter; and (c) request (3) is overly broad in that it seeks information that is "irrelevant to this frivolous claim of discrimination" as "HUD is again in search of something to try to find that these Respondents somehow

4

acted in a discriminatory fashion." *Id*. at 16–17.

Finally, Respondents argue that they cannot be compelled to provide the requested documents because (a) the Association is the only Respondent in possession of the information, (b) Florida Statute § 718.111(12) prevents the Association from disclosing the information to HUD, and (c) there is sensitive information within the records that should be protected from disclosure. *Id*. at 17–18.

## II.    ANALYSIS

As an initial matter, I note that "in the exercise of their lawful investigatory powers, administrative agencies are conferred 'broad discretion to require the disclosure of information concerning matters within their jurisdiction.'" *Martin v. Gard*, 811 F. Supp. 616, 619 (D. Kan. 1993) (quoting *Phillips Petroleum Co. v. Lujan*, 951 F.2d 257, 260 (10th Cir. 1991) (citations omitted)). The Supreme Court has defined this discretion as the power of "original inquiry" and has described it as "more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt Co.*, 338 U.S. at 642–43.

   1. *Authority to Investigate and Relevance*

With that principle in mind, I find that the Government has met its burden to make a prima facie showing that the subpoenas should be enforced. The Government cites *United States v. Powell*, 379 U.S. 48 (1964), which although it differs slightly from the factors described in *Morton Salt*, lays out the four requirements for a Court

5

to enforce an administrative subpoena: (1) that the investigation is being conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to the purpose; (3) that the information sought is not already within HUD's possession; and (4) that the administrative steps required have been followed. ECF No. 1 at 8 (citing *Powell*, 379 U.S. at 57–58).[1] Whether analyzing the subpoenas under the criteria laid out in *Morton Salt Co.* or *Powell*, the result is the same.

First, there is a legitimate purpose for conducting the investigation: HUD is entitled to investigate complaints of housing discrimination under 42 U.S.C. §§ 3610, 3611, and 24 C.F.R. § 103.200. 24 C.F.R. §103.200 specifically provides that

> (a) Upon the filing of a complaint under § 103.40, the Assistant Secretary will initiate an investigation. The purposes of an investigation are:
>
> > (1) To obtain information concerning the events or transactions that relate to the alleged discriminatory housing practice identified in the complaint.
> >
> > (2) To document policies or practices of the respondent involved in the alleged discriminatory housing practice raised in the complaint.
> >
> > (3) To develop factual data necessary for the General Counsel to make a determination under § 103.400 whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, and for the Assistant Secretary to make a determination under § 103.400 that no reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, and to take other actions provided under this part.

---

[1] The Government argues, and Respondents do not contest, that the information sought is not already within HUD's possession, or that the administrative steps required have been followed. Therefore, I need not discuss *Powell* factors (3) and (4).

6

In this instance, HUD received a complaint from a citizen who claims to have been the victim of discriminatory housing practices based on her association with disabled individuals. That complaint serves as the basis for HUD's suspicion that the law is being violated. It is the impetus for HUD to open an investigation to obtain information to determine whether reasonable cause exists to believe that a discriminatory housing practice has actually occurred. I find that the Government has established both that the inquiry is within HUD's authority to investigate, and that the investigation is being conducted pursuant to a legitimate purpose—to investigate a suspicion that a discriminatory housing practice has occurred in violation of the law.

The Government has also shown that the subpoenas seek information that is relevant to HUD's investigation of discriminatory housing practices. Ms. Tremmel and Ms. Piraino claim the Association employed discriminatory housing practices when it denied Ms. Tremmel the opportunity to lease her unit to Ms. Piraino on the basis of Ms. Piraino's close association with disabled individuals. The Association countered that it did not deny Ms. Piraino's lease application based on her job as a nurse, but because of its blanket policy to not approve any new rental applications and not allow anyone to move in during the beginning months of COVID-19. HUD seeks to investigate not only Ms. Tremmel and Ms. Piraino's claim, but the Association's claim as well. Relevant to that inquiry is the rental and sales applications during that time as well as the documents and communications relating to those rentals and sales applications (requests (1) and (2)). If there truly was a

blanket policy of denying all rental applications that came in during this time, regardless of an applicant's association with disabled individuals, then the records in requests (1) and (2) should reflect it.

It is also reasonable to believe that if the Association did in fact adopt such a blanket policy, then it would have discussed it in board meetings or membership meetings before, during, or after the policy was enacted, making request (3) relevant to the investigation into potential discriminatory housing practices committed by the Boca View Condominium.

2. *Overly Broad*

Once the Government has made a prima facie showing that the subpoenas satisfy the *Morton Salt Co./Powell* factors, the Court should enforce the subpoena unless the respondent can show that (1) the subpoena is overly broad or burdensome, or (2) "that enforcement would constitute an abuse of [] process." *Martin*, 811 F. Supp. At 620 (citing *EEOC v. Marlyand Cup Corp.*, 785 F.2d 471, 475–76 (4th Cir. 1986) and *United States v. Wilson*, 864 F.2d 1219, 1222 (5th Cir. 1989)). I do not find that Respondents have met their burden to show either.[2]

Given the broad discretion the Court must afford HUD to investigate this matter, I find that the time period requested (March 1, 2020 to November 23, 2020 for request (1) and (2) and January 1, 2020 to November 23, 2020 for request (3)) is not overly broad. The information HUD could gather from this seven to eleven-month

---

[2] To be clear, Respondents do not argue that enforcement of the subpoenas would constitute an abuse of process.

8

period is relevant to its investigation. For example, HUD may be interested to see whether, even after the Association's blanket policy was rescinded in June 2020, there were any more instances in which an individual applied to lease a condo and was denied on the basis of his or her association with disabled individuals. Similarly, just because Ms. Tremmel and Ms. Piraino's claim stems from an incident involving a rental application, does not mean that HUD does not have the "broad discretion" to investigate potential discriminatory housing practices against potential *owners* at Boca View Condominium.

    Respondents have also failed to demonstrate that request (3) is overly broad. Simply stating that "it is unclear why HUD is requesting minutes of Board Meetings" is not enough to show that the request is overly broad given HUD's broad investigatory power. Furthermore, Respondents' argument that "HUD is in search of something to try to find that these Respondents somehow acted in a discriminatory fashion" is correct and is exactly what HUD is entitled to do at this stage of its investigation—gather evidence to determine whether reasonable cause exits to believe Respondents exercised discriminatory housing practices. Reviewing eleven months' worth of board meeting minutes where such practices could have been discussed, debated, or even enacted, is not so outside the scope of potentially relevant information that it falls outside of the broad scope of HUD's investigatory discretion.

    Simply put, Respondents have not met their burden to establish that the subpoenas are overly broad given HUD's broad discretion to investigate potential discriminatory housing practices.

3. *Florida Statute § 718.111(12) and Privacy Concerns*

Respondents argue that Florida Statute § 718.111(12) prohibits the Association from disclosing any documentation obtained as part of a lease or sale. Having reviewed the statute, I find Respondents' interpretation to be inaccurate. The statute provides that an association must maintain specific documentation, which constitutes the "official records" of the association. Fla. Stat. § 718.111(12)(a). Documentation obtained as part of a lease or sale of a unit in the condominium is considered "official records" that the association must keep. *Id*. Some of the official records of the association "shall be made available to a unit owner" or are "open to inspection by any association member or the authorized representative of such member at all reasonable times." Fla. Stat. § 718.111(12)(b)–(c). However, the statute provides that some records are not accessible to unit owners. Fla. Stat. § 718.111(12)(c)(3). Included in the list of official records not accessible to unit owners is "[i]nformation obtained by an association in connection with the approval of the lease, sale, or other transfer of a unit." *Id*. The statute says only that, unlike other "official records" to which unit owners enjoy access, the same rule does not apply to information obtained in connection with approval of a lease or sale. The statute does not say that the official records are barred from disclosure to *anyone*, especially when requested by the Government in an otherwise enforceable administrative subpoena. HUD is not a "unit owner" to which Fla. Stat. § 718.111(12)(c)(3) applies and does not prohibit HUD from exercising its authority to investigate a complaint if discriminatory housing practices.

10

Respondents also argue that the requested records contain "applicants' personal and private information such as Social Security numbers, credit history and background checks." ECF No. 5 at 18. In its Petition, the Government was agreeable to the entry of a protective order to shield "any sensitive financial information or social security numbers included in any records responsive to the subpoenas. ECF No. 1 at 10. I find that suggestion to be appropriate and an adequate protection against public disclosure of applicants' private information.

4. *Possession of Requested Documents*

Respondents argue the only entity with possession of the requested documents is the Association because the records requested belong only to the Association and not the president of the association, the management company, or its employees. ECF No. 5 at 17.

Federal Rule of Civil Procedure 34(a) governs the production of documents in civil matters. Pursuant to Rule 34(a), a party must produce documents in response to a request for production where those documents are "in the responding party's possession, custody, or control [.]" Fed. R. Civ. P. 34(a). Whether documents are in a parties' control under Rule 34 is broadly construed. *See, e.g., Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) (finding that "[c]ontrol is defined not only as possession, but as the legal right to obtain documents requested upon demand"); *Jans ex rel. Jans v. The GAP Stores, Inc.*, No. 05–1534, 2006 WL 2691800, at *2 (M.D. Fla. Sept. 20, 2006) (emphasizing that the "term 'control' is broadly construed"). "Control," therefore, does not require that a party have legal ownership or actual physical

possession of the documents at issue; indeed, documents have been considered to be under a party's control (for discovery purposes) when that party has the "right, authority, or practical ability to obtain the materials sought on demand." *Desoto Health & Rehab, L.L.C. v. Philadelphia Indem. Ins. Co.*, No. 09–599, 2010 WL 4853891, at *3 (M.D. Fla. Nov. 22, 2010).

Accordingly, each of the Respondents should either (i) produce the documents if they are in its possession, custody, or control, (ii) serve a written response to the subpoena stating that, after a reasonable inquiry, no responsive documents exist, *see* Fed. R. Civ. P. 34(b)(2) or (iii) serve a written response to the subpoena stating that, after a reasonable inquiry, the Respondent has determined that responsive documents exist but those documents are not within its care, custody, or control.

## I. RECOMMENDATION

1. For the foregoing reasons, I RECOMMEND that the Government's Petition (ECF No. 1) be **GRANTED** and the Respondents be ordered to produce to the Government the documents and complete responses to the information requested in the subpoenas within fourteen (14) days after being served with the Court's Order. Respondents do not need to duplicate identical responses. Any sensitive financial information or Social Security Numbers should be disclosed subject to a protective order.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and

Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 25th day of February, 2022, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE